IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

FRANKIE HAMMONDS,            )
                             )
      Plaintiff,             )
                             )        CIVIL ACTION NO.
      v.                     )        2:21cv448-MHT
                             )           (WO)
MONTGOMERY CHILDREN'S        )
SPECIALTY CENTER, LLC,       )
                             )
                             )
      Defendant.             )

## OPINION AND ORDER

Plaintiff Frankie Hammonds, an individual with paraplegia and a traumatic brain injury, brought this lawsuit in state court, alleging that defendant Montgomery Children's Specialty Center, LLC ("MCSC") failed to protect him from abuse and neglect at the hands of its staff and failed to report his complaints of mistreatment to the Alabama Department of Human Resources as required by Alabama Department of Mental Health regulations. Hammonds brings the following five federal claims against MCSC: discrimination under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

(count one of the complaint); harassment under § 504 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (count three); retaliation under the Fair Housing Act (FHA), 42 U.S.C. § 3601 et seq. (count five); discrimination under the ADA (count six); and retaliation under § 504 and the ADA (count nine).[1] He also brings four state claims for the following: negligence or wantonness (count two); negligent or wanton hiring, retention, training, or supervision (count four); felonious injury (count seven); and menacing (count eight). MCSC removed this lawsuit to this federal court under 28 U.S.C. §§ 1441 and 1446. This court has removal jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity), and 1367 (supplemental).

This case is before the court on MCSC's partial motion to dismiss seven of the nine counts in the

_____

1. While the complaint is somewhat confusing as to what each of the five counts encompasses and how the counts can be distinguished from one another, this overview reflects the court's best effort to distinguish them.

complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted, although Hammonds will be given an opportunity to move for leave to file an amended complaint if he so chooses.

### I. MOTION-TO-DISMISS STANDARD

To survive a defendant's Rule 12(b)(6) motion to dismiss, a complaint need not plead "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), but it must plead "enough facts to state a claim to relief that is plausible on its face," *id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

3

claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In considering a defendant's motion to dismiss, the court accepts the plaintiff's factual allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the light most favorable to the plaintiff, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). However, the court need not accept a plaintiff's conclusory allegations or "formulaic recitation[s] of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.

## II. FACTUAL BACKGROUND

The allegations of the complaint, taken in the light most favorable to Hammonds, establish the following facts.

As a result of a car accident in February 2017, when he was still a minor, Hammonds suffers a traumatic

**4**

brain injury, spinal cord damage, and paraplegia.[2]   He requires a wheelchair and a catheter and needs to be turned every two hours to prevent decubitus ulcers. MCSC operates a residential facility that provides institutional care to children with mental and physical disabilities.   It receives federal funding, such as Medicaid.

Around June 2018, Hammonds was "involuntarily committed to the care and custody of the [Alabama] Department of Mental Health," Compl. (Doc. 1-1) ¶ 71, and the Alabama Department of Human Resources then placed him in the care of MCSC, *see id.* ¶¶ 11-12.   He alleges in his complaint that, during his time as a resident at MCSC, the facility was not properly staffed, the staff the facility did have was not properly trained, and the staff subjected him to neglect, verbal abuse, and a hostile environment.

---

2. While the complaint refers to the event that caused these injuries as "an incident," Compl. (Doc. 1-1) ¶ 10, Hammonds's response to the partial motion to dismiss clarifies that it was a car accident, *see* Pl.'s Resp. to Mot. for Partial Dismissal (Doc. 15) at 1.

He alleges, more specifically, that MCSC staff was not trained in the proper operation of his wheelchair and did not properly apply his left arm brace; that the staff failed to schedule regular therapy for him, failed to feed him properly, and sent him to school with unwashed hair; and that the staff did not turn him every two hours as needed to prevent decubitus ulcers. He further alleges that his personal items were stolen and that he did not receive his monthly allotment of federal funds; that the staff failed to give him sleeping medications at 8:00 p.m. as ordered, often causing him to arrive late to school; and that his lateness was exacerbated because he was not cathed by MCSC staff before school, with the result that a school nurse needed to install a catheter upon his arrival.

Hammonds further alleges that, when he complained to MCSC management about neglect and mistreatment of both himself and other minor residents of the facility, MCSC staff retaliated against him with increased abuse, harassment, and neglect; that MCSC failed to report his

6

complaints to the Department of Human Resources, in violation of a policy of the Alabama Department of Mental Health; and that, ultimately, MCSC either evicted him from its facility or treated him so harshly that he had no choice but to leave to protect his own safety.

In December 2019, according to Hammonds, he was admitted to Children's Hospital in Birmingham with a primary diagnosis of a stage IV decubitus ulcer of ischial area, as well as mild, chronic malnutrition; removal of the dead tissue around the ulcer required two surgeries; and he was discharged from the hospital about one month after his admission.

### III. DISCUSSION

#### A. Americans with Disabilities Act

Hammonds brings claims of harassment (count three), discrimination (count six), and retaliation (count nine) under Title III of the ADA, which applies to "place[s] of public accommodation," 42 U.S.C. § 12182.

MCSC responds that Hammonds has pleaded only monetary damages, that such damages are unavailable under Title III, and that his ADA claims must therefore be dismissed.

42 U.S.C. § 12188 provides the available remedies for Title III claims of discrimination and harassment. 42 U.S.C. § 12203(c) adds that § 12188 provides the available remedies for claims of retaliation with respect to Title III. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1169 (11th Cir. 2003) (interpreting the available remedies under § 12203(c) by reference to the context in which a plaintiff suffers retaliation); *G. v. Fay School*, 931 F.3d 1, 10-11 (1st Cir. 2019) (same). In *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221 (11th Cir. 2021), the Eleventh Circuit Court of Appeals stated that "injunctive relief ... is the only form of relief available to plaintiffs suing under Title III of the ADA." *Id.* at 1230 (citing 42 U.S.C. § 12188(a)(1)). Hammonds does not explain why the Eleventh Circuit's

8

interpretation of Title III does not foreclose his claims for damages.

Instead, Hammonds contends that his request for "[a]ll other such further [relief] in any way available at law or in equity," Compl. (Doc. 1-1) ¶ 113, includes a request for injunctive relief, which is available under Title III. However, he has not sufficiently alleged Article III standing to seek injunctive relief on these claims. Because injunctive relief is forward-looking, Article III standing requires a plaintiff to allege (1) "that he is likely to suffer future injury"; (2) "that he is likely to suffer such injury at the hands of the defendant"; and (3) "that the relief the plaintiff seeks will likely prevent such injury from occurring." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991). "To show a real and immediate threat of future discrimination in the context of an ADA claim, a plaintiff must have 'attempted to return' to the non-compliant property or 'intend to do so in the

future.'"   *Kennedy*, 998 F.3d at 1233 (quoting *Shotz v.*
*Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

Here, Hammonds has not alleged that he is likely to
return to MCSC in the future or that he is otherwise
likely to suffer some future injury that is
attributable to MCSC, much less that the unspecified
injunctive relief that he purports to request will
likely redress said future injury.   Accordingly, his
claims under the ADA, whether for damages or for
injunctive relief, must be dismissed.


B.Rehabilitation Act

Hammonds also brings claims of discrimination
(count one), harassment (count three), and retaliation
(count nine) under § 504 of the Rehabilitation Act.
With respect to discrimination and harassment, § 504
provides:

> "No otherwise qualified individual with a
> disability in the United States ... shall,
> solely by reason of her or his disability, be
> excluded from the participation in, be denied
> the benefits of, or be subjected to

10

discrimination under any program or activity
receiving Federal financial assistance ....”

29 U.S.C. § 794(a). "To state a claim under ... § 504,
a plaintiff must establish ‘(1) that he is a qualified
individual with a disability; (2) that he was either
excluded from participation in or denied the benefits
of a public entity's services, programs, or activities,
or was otherwise discriminated against by the public
entity; and (3) that the exclusion, denial of benefit,
or discrimination was by reason of the plaintiff's
disability.’" *Silberman v. Miami Dade Transit*, 927
F.3d 1123, 1134 (11th Cir. 2019) (quoting *Bircoll v.
Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).
Moreover, to recover compensatory damages under § 504,
a plaintiff must establish that the defendant violated
the plaintiff's rights with "discriminatory intent."
*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334,
342 (11th Cir. 2012). Discriminatory intent may be
established by an allegation that the defendant acted
with "deliberate indifference," that is, that "the
defendant *knew* that harm to a federally protected right

11

was substantially likely and ... *failed* to act on that likelihood." *Id.* at 344-45 (emphases and ellipsis in original) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)). "Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014).

There is no dispute that Hammonds has sufficiently alleged that he has a disability. A disability is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A); *see also* 29 U.S.C. § 709(2)(B) (incorporating the definition in § 12102 for the purpose of § 504 of the Rehabilitation Act). "Major life activities" include, among other activities, "caring for oneself," "walking," and "standing," as well as the operation of "bowel, bladder, neurological, [and] brain ... functions." 42 U.S.C. § 12102(2).

12

Hammonds's paraplegia and brain injury, as described in the complaint, substantially limit these activities and qualify as a disability.  It is also clear that he has sufficiently alleged that MCSC receives federal financial assistance.

MCSC argues that Hammonds has failed to allege facts that, if proven, would show that it denied him any services or discriminated against him because of his disability.  The court agrees.[3]

"The ADA and [Rehabilitation Act] focus not on quality of medical care or the ultimate treatment outcomes, but on the equal opportunity to *participate* in obtaining and utilizing services." *Silva v. Baptist S. Fla., Inc.*, 856 F.3d 824, 834 (11th Cir. 2017)

_____

3. Because Hammonds has failed to allege that he was denied the benefits of MCSC's services by reason of his disability, the court need not reach the issue of whether he "qualified" for participation in and receipt of those services.  Resolution of that question would necessarily depend on the precise services that were allegedly denied. *See Se. Cmty. Coll. V. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.").

(emphasis in original).    Accordingly, in *Olmstead v.*
*L.C. ex rel. Zimring*, 527 U.S. 581 (1999), the Supreme
Court declined to "hold that the ADA imposes on the
States a 'standard of care' for whatever medical
services they render, or that the ADA requires States
to 'provide a certain level of benefits to individuals
with disabilities.'"    *Id.* at 603 n.14.    And the
Eleventh Circuit has held that the ADA is not a "remedy
for medical malpractice" and is not violated by a
defendant's failure to treat a disabled plaintiff's
medical needs, without more.    *Jones v. Rutherford*, 546
F. App'x 808, 811-12 (11th Cir. 2013) (per curiam)
(quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d
1289, 1294 (11th Cir. 2005) (per curiam)).[4]    Although
these principles were announced in cases addressing the
ADA, they apply with equal weight to § 504 of the
Rehabilitation Act.    *See Cash v. Smith*, 231 F.3d 1301,

---

4. Other federal courts of appeals have reached the
same conclusion.  *See, e.g.*, *McGugan v. Aldana-Bernier*,
752 F.3d 224, 232 (2d Cir. 2014); *Fitzgerald v. Corr.*
*Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005);
*Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

1305 & n.2 (11th Cir. 2000) ("Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").

Here, Hammonds's allegations go more toward the quality of medical care he received than to his opportunity to participate in care.  While the line between failure to provide quality care and failure to provide services altogether is not clear-cut, all the allegations in the complaint fall firmly on the side of challenging the quality of care provided.

Read in the light most favorable to Hammonds, the complaint alleges that MCSC engaged in serious mistreatment and neglect of the needs attributable to his disabilities, which resulted in his suffering from malnutrition and a decubitus ulcer, among other harms. However, the complaint never alleges facts that could support an inference that MCSC subjected him to this mistreatment or the associated harassment or denied him appropriate treatment "by reason of" his disabilities. The complaint's conclusory allegations that "[t]he

15

conduct of the workers assigned to protect Hammonds, as well as the actions or inactions of the other named Defendants, meets any intentionality requirements of § 504," Compl. (Doc. 1-1) ¶ 78, or that "[t]his conduct was based upon his disabled status," *id.* ¶ 83, do not suffice. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Without factual allegations that could supply this causal link, Hammonds has not stated claims of discrimination or harassment under § 504.

Hammonds responds with citations to Eighth Amendment and Fourteenth Amendment case law supporting his argument that knowledge of the development of decubitus ulcers, coupled with an intentional refusal to treat them, amounts to deliberate indifference to serious medical needs. But the deliberate indifference that § 504 damages require is deliberate indifference to the plaintiff's "statutory rights." *McCullum*, 768 F.3d at 1147. Whatever relevance MCSC officials'

16

alleged knowledge of and deliberate indifference to
Hammonds's medical needs might have to his claims, it
does not relieve him of the obligation to allege that
MCSC's failures to treat those needs were "by reason
of" his disability or disabilities under § 504.   As
explained above, the complaint does not meet this
requirement.   The ADA is not a medical malpractice
statute.

Hammonds's claim of retaliation under § 504 fails
for a similar reason.   Assuming Hammonds may bring a
claim of retaliation under § 504, the Eleventh Circuit
has stated that "a prima facie case for retaliation
under the Rehabilitation Act is the same as one under
the ADA" and requires a plaintiff to allege that "(1)
he participated in a statutorily protected activity or
expression; (2) he suffered an adverse action; and (3)
there was a causal link between the adverse action and
the protected activity or expression."   *Williams v.
Ala. Dep't of Indus. Relations*, 684 F. App'x 888, 894
(11th Cir. 2017) (per curiam).   "A person 'engages in

17

statutorily protected activity if [he] has opposed any ... practice made unlawful by' section 504 of the Rehabilitation Act." *Edwards v. Gwinnett Cty. Sch. Dist.*, 977 F. Supp. 2d 1322, 1331 (N.D. Ga. 2013) (Thrash, J.) (quoting *Morales v. Ga. Dep't of Human Res., Div. of Fam. & Children Servs.*, 446 F. App'x 179, 183 (11th Cir. 2011) (per curiam)); *see also Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2017) ("Protected activities are those statutorily protected under the ADA, including opposing or complaining about discrimination based on disability."). Although the opposed conduct may be "actually lawful," the plaintiff must demonstrate "a good faith, reasonable belief" that the conduct was unlawful under the relevant statute. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)) (discussing the framework under Title VII, 42 U.S.C. § 2000e et seq., on which the § 504 test is based).

18

The complaint fails to allege that Hammonds engaged in such protected activity, namely opposition to a practice made unlawful by the Rehabilitation Act. While he alleges that he and his family complained to MCSC's management about "abuse, mistreatment, neglect and exploitation," Compl. (Doc. 1-1) ¶ 102, for the reasons discussed above, he does not allege facts that could support the inference that his complaints addressed conduct that one could reasonably believe to constitute unlawful discrimination based on disability under the Rehabilitation Act or the ADA.  Accordingly, Hammonds has not stated any claim for relief under the Rehabilitation Act.


### C. Fair Housing Act

Hammonds also brings a claim of retaliation (count five) under the FHA.  He alleges that, "after he complained of and reported neglect, mistreatment, exploitation, and abuse," he was either "kick[ed] out" of MCSC's facility or treated so harshly that "he had

19

no choice but to leave the facility for his own safety." Compl. (Doc. 1-1) ¶ 76.

The FHA provides that it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or protected by" the FHA discrimination provisions. 42 U.S.C. § 3617. Relevant here, 42 U.S.C. § 3604(f)(2) prohibits discrimination "in the provision of services or facilities in connection with" a dwelling because of an individual's handicap. The retaliation framework under § 3617 is identical to that under § 504. *See Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644-45 (11th Cir. 2015) (per curiam) (citing to the Title VII framework). As in the § 504 context, Hammonds must allege that he engaged in activity protected by the applicable statute, here, the FHA. And as in the § 504 context, Hammonds fails to allege facts that give rise to an inference that he engaged in activity protected under any relevant section of the

20

FHA.   Hammonds argues only that he was retaliated against for "speaking out against discriminatory treatment."  Pl.'s Resp. to Mot. for Partial Dismissal (Doc. 15) at 13.   For the reasons discussed in the preceding section, the allegations in the complaint fall short.

### D. State Claims

Finally, the court turns to Hammonds's state claims for felonious injury (count seven) and menacing (count eight) under Ala. Code § 38-9-7 and § 13A-6-23, respectively.  The Alabama Supreme Court has held that "[o]ne claiming a private right of action within a statutory scheme must show clear evidence of a legislative intent to impose civil liability for a violation of the statute."  *Liberty Nat. Life Ins. Co. v. Univ. of Ala. Health Servs. Found., P.C.*, 881 So.2d 1013, 1025 (Ala. 2003) (quoting *Blockbuster, Inc. v. White*, 819 So.2d 43, 44 (Ala. 2001)).  And, similarly, the Eleventh Circuit has expressed "reluctan[ce] to

21

read private rights of action in state laws where state
courts and state legislatures have not done so."
*Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195,
198 (11th Cir. 1992) (alteration in original) (quoting
*Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791, 795
(11th Cir. 1989)).  Against this backdrop, this court
has found no support for Hammonds's position that
either statute provides a privately enforceable civil
cause of action.

Both statutes at issue establish criminal offenses.
Section 38-9-7 establishes felony and misdemeanor
penalties for violations of § 38-9-7(a), which declares
it unlawful "for any person to abuse, neglect, exploit,
or emotionally abuse any protected person" under the
statute.   And § 13A-6-23, located within Alabama's
criminal code, codifies the crime of menacing and
states that it is punishable as a misdemeanor.  With
respect to civil liability for crimes, the Alabama
Supreme Court has held generally that, "although an act
that constitutes a crime can also be the basis of a

22

civil action, civil liability will exist 'only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted.'"  *Prill v. Marrone*, 23 So.3d 1, 11 (Ala. 2009) (per curiam) (quoting *Martinson v. Cagle*, 454 So.2d 1383, 1385 (Ala. 1984) (per curiam)). In both *Prill* and *Martinson*, the Alabama Supreme Court held that counts alleging "only that the criminal acts were committed and that [the plaintiffs] were thereby injured[] do not state a cause of action for which relief may be granted." *Martinson*, 454 So.2d at 1385; *see also Prill*, 23 So.3d at 11.  That is the case with both of Hammonds's claims at issue here.

With respect to the criminal offense of menacing under Ala. Code § 13A-6-23, Hammonds cites no case, and the court has found none, in which a court has allowed a claim to proceed under this criminal statute.  *Cf. Cromartie v. Birmingham*, No. 2:19-cv-568-ECM-SMD, 2020 WL 7075085, at *4 (M.D. Ala. July 30, 2020) (Doyle,

23

M.J.) ("It does not appear that Alabama recognizes a separate cause of action for ... menace."), *adopted by Cromartie v. Birmingham*, No. 2:19-cv-568-ECM, 2020 WL 6060876 (M.D. Ala. Oct. 14, 2020) (Marks, C.J.).

As for his claim under § 38-9-7, that section sets criminal penalties for the "abuse, neglect, exploitation, or emotional abuse" of persons protected by the statute.  Ala. Code § 38-9-7.  The statute, titled the Adult Protective Services Act of 1976, *see* Ala. Code § 38-9-1, is intended to protect "adult citizens of the state who, because of the infirmities of age, disabilities or like incapacities, are in need of protective services" from "exploitation, neglect, abuse and degrading treatment," Ala. Code § 38-9-3.  Without reaching whether Hammonds, who was a minor during his stay at MCSC's facility, was a "protected person,"[5] nothing in § 38-9-7 purports to establish a civil cause of action.

_____

5. A "protected person" under the statute is "[a]ny person over 18 years of age subject to protection under

In support of his claim under § 38-9-7, Hammonds relies upon the "felonious injury rule."  If his reference to that rule is a reference to Ala. Code § 6-5-370, his claim must still fail.  Section 6-5-370 states, "For any injury, either to person or property, amounting to a felony, a civil action may be commenced by the party injured without prosecution of the offender."  Section 6-5-370 simply abolished the common law rule that a civil action for injury to person or property, amounting to a felony, could not be maintained without prosecution.  *See Wilson v. Singer Sewing Mach. Co.,* 108 So. 358, 359 (Ala. 1926).  As the Alabama Supreme Court has further explained, "Section 6-5-370 does not create a cause of action; rather, it merely allows a plaintiff to commence a civil action

---

this chapter or any person, including, but not limited to, persons with neurodegenerative disease, persons with intellectual disabilities and developmental disabilities, or any person over 18 years of age that is mentally or physically incapable of adequately caring for himself or herself and his or her interests without serious consequences to himself or herself or others."  Ala. Code § 38-9-2(18).

even if the plaintiff does not pursue criminal prosecution of the defendant." *Lewis v. Fraunfelder*, 796 So.2d 1067, 1070 (Ala. 2000); *see also Preskitt v. Lyons*, 865 So.2d 424, 429 (Ala. 2003) ("§ 6-5-370 only eliminates an obstacle for plaintiffs with a valid cause of action; it does not create a civil cause of action for any injury that amounts to a felony."). Accordingly, § 6-5-370 is not a means for Hammonds to bring his claim for a violation of § 38-9-7. *See Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1274 (M.D. Ala. 2010) (Thompson, J).

In addition to his reference to the felonious injury rule, Hammonds cites to *Proctor v. Classic Auto., Inc.*, 20 So.3d 1281, 1287 (Ala. Civ. App. 2009), for his argument that § 38-9-7 creates a valid civil cause of action. But the claims at issue in *Proctor* did not include a freestanding claim for a violation of the statute. Rather, the issue there was whether a violation of § 38-9-7 could establish negligence per se to support "negligence and wantonness claims."

26

*Proctor*, 20 So.3d at 1287.  In the absence of state-law support indicating that Hammonds could bring a claim directly under § 38-9-7 in addition to the claim for negligence or wantonness that he has already pleaded, the court must dismiss this claim.

The above discussion is not to say that there could not arguably be a parallel civil cause of action, based on either the common law or another statute, under which Hammonds could potentially state a claim for relief.  The court is merely holding that neither of the criminal statutes on which he relies supports the relief he seeks.  In the context of assault, for example, a plaintiff brings a civil claim not under one of Alabama's statutes criminalizing assault, but under the common law tort of assault.  *See, e.g.*, *Machen v. Childersburg Bancorporation, Inc.*, 761 So.2d 981, 983 (Ala. 1999) (recognizing assault and battery and other causes of action as "common-law tort theories").  To the extent Hammonds asks the court to infer, without

27

support, that his claims must be treated differently, the claims will be dismissed.

## IV. Conclusion

For the reasons stated above, counts one (discrimination under § 504), three (harassment under § 504 and the ADA), five (retaliation under the FHA), six (discrimination under the ADA), seven (felonious injury), eight (menacing), and nine (retaliation under § 504 and the ADA) of the complaint will be dismissed. The case will proceed on counts two (negligence or wantonness) and four (negligent or wanton hiring, retention, training, or supervision).

\*\*\*

Accordingly, it is ORDERED that:

(1) Defendant Montgomery Children's Specialty Center, LLC's partial motion to dismiss (Doc. 5) is granted.

(2) Counts one (discrimination under § 504), three (harassment under § 504 and the ADA), five (retaliation under the FHA), six (discrimination under the ADA), seven (felonious injury), eight (menacing), and nine (retaliation under § 504 and the ADA) of the complaint are dismissed without prejudice.  The case will proceed on counts two (negligence or wantonness) and four (negligent or wanton hiring, retention, training, or supervision).

(3) If plaintiff Frankie Hammonds wants to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), he must file, within 14 days of the date of this order, a motion for leave to amend.

DONE, this the 29th day of March, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE