IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
FRANKIE HAMMONDS,            )
                             )
     Plaintiff,              )
                             )     CIVIL ACTION NO.
     v.                      )       2:21cv448-MHT
                             )           (WO)
MONTGOMERY CHILDREN'S        )
SPECIALTY CENTER, LLC,       )
                             )
     Defendant.              )
```

OPINION AND ORDER

This litigation involves a dispute between plaintiff Frankie Hammonds, who has paraplegia and a traumatic brain injury, and defendant Montgomery Children's Specialty Center, LLC ("MCSC"). Hammonds alleges that MCSC failed to protect him from abuse and neglect at the hands of its staff, resulting in a wide range of mental and physical injuries. He further alleges that MCSC failed to report his complaints of mistreatment to the Alabama Department of Human Resources, as required by the Alabama Department of Mental Health. In an amended complaint, he asserts two state-law claims against MCSC:

first, for negligence or wantonness with regard to state regulations applicable to group-home facilities; and, second, for negligent or wanton hiring, retention, training, or supervision of staff. MCSC denies all allegations of wrongdoing.[1]

Jurisdiction is proper pursuant to 28 U.S.C. § 1332 (diversity).[2]

---

1. Hammonds also asserts a federal claim against fictitious defendants (whose identities are not currently known) for failure to provide adequate healthcare as required by the United States Constitution and other unspecified federal laws. MCSC responds that neither it nor any of its employees, agents, contractors, or staff members are appropriate parties to be substituted for the fictitious defendants against whom Hammonds raises his federal claim.

In his original complaint, Hammonds also asserted seven additional federal and state claims against MCSC, all of which were dismissed without prejudice earlier in this litigation. *See Hammonds v. Montgomery Child.'s Specialty Ctr., LLC*, 594 F. Supp. 3d 1280 (M.D. Ala. 2022) (Thompson, J.) (finding issues of standing, failure to state a claim, and unavailability of privately enforceable civil causes of action with regard to state criminal law). The dismissed claims were not reasserted in the amended complaint. *See* Amended Compl. (Doc. 21) at 2.

2. Hammonds also rests jurisdiction on 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental).

This lawsuit is now before the court on MCSC's motion to compel arbitration pursuant to the requirements of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.  For the reasons below, the court will grant MCSC's motion and stay these proceedings pending arbitration.

### A. Legal Standard

The FAA provides that:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.  It is, at its core, "a policy guaranteeing the enforcement of private contractual arrangements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985), requiring that courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  "Accordingly, the first task of a court asked to compel

arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp.*, 473 U.S. at 626.

In order to answer this question, the court must make two preliminary determinations: first, whether there is a valid agreement to arbitrate, and, second, whether the dispute in question falls within the scope of that agreement. *See Dean Witter Reynolds, Inc. v. McDonald*, 758 So. 2d 539, 542 (Ala. 1999). For purposes of this inquiry, the court applies regular Alabama contract principles, construed through the lens of federal policy favoring arbitration. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

If the court finds that there *is* a valid agreement to arbitrate, and that the claim at issue falls within the scope of the arbitration clause, it must determine whether the underlying contract is one that "evidence[es] a transaction involving commerce" within the meaning of the FAA. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 53 (2003) (internal quotation marks omitted). A party

seeking to enforce an arbitration agreement under the FAA need show only "that the transaction turns out, in fact, to have involved interstate commerce, even if the parties did not contemplate an interstate commerce connection" when entering the agreement. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (internal quotation marks omitted).

In this context, Alabama law provides that a motion to compel arbitration is "analogous to a motion for summary judgment," in that the party seeking to compel arbitration bears the burden of proving the above elements (that is, the existence of a binding arbitration agreement, its applicability to the claim at issue, and a sufficient connection to interstate commerce). *Fleetwood Enters., Inc. v. Bruno*, 784 So. 2d 277, 280 (Ala. 2000). If the moving party makes the requisite showing, the burden shifts to the nonmoving party to present evidence that the arbitration agreement is invalid or inapplicable to the dispute in question. *See id*.

Finally, if the court finds that there is a binding and enforceable arbitration clause pursuant to the FAA, it is required to order the parties to submit to arbitration. *See* 9 U.S.C. § 4. Additionally, if one of the parties to the agreement requests a stay of litigation pending said arbitration, the court is statutorily bound to grant the stay. *See* 9 U.S.C. § 3.

## B. Factual Background

Because, as stated, motions to compel arbitration are treated similarly to motions for summary judgment, the factual allegations should be viewed in the light most favorable to the nonmoving party. *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F. 3d 1209, 1215 n.3 (11th Cir. 2021).

In February 2017, when Hammonds was 16, he suffered severe injuries to his brain and spinal cord in a car accident, which left him partially paralyzed. As a result, he has limited use of motor skills and bodily functions, requires a wheelchair and a catheter for daily

6

functioning, and must be turned every two hours in order to prevent decubitus ulcers (injuries to skin and tissue more commonly known as bedsores).

In May or June 2018, while Hammonds was a minor, he was removed from his home and taken into the custody of the Alabama Department of Human Resources.[3] The department placed Hammonds at the MCSC, a long-term-care nursing facility incorporated in the State of Missouri that operates facilities in Montgomery County, Alabama, through an agent.

On May 24, 2018, an official with the Department of Human Resources signed an arbitration rider. The rider

---

3. In his response to the defendant's motion to compel arbitration, Hammonds argues that "there is no evidence that DHR [had] the legal authority to sign any arbitration agreement on Hammonds' behalf." However, in his amended complaint, Hammonds concedes that he was "an involuntarily civilly incapacitated person" when the State placed him at MCSC. Amended Compl. (Doc. 21) at 4. To this court's knowledge, "involuntarily civil incapacitation" for a minor is not a recognized legal status in Alabama. So the court understands Hammonds's statement to mean that he was in the custody of the State at the time of his MCSC admission. The issue of custody is discussed further in this opinion.

7

provides that: "The parties agree that any and all disputes between [the resident and MCSC] ... except for an action for eviction, shall be decided by arbitration in accordance with this Rider." Arbitration Rider (Doc. 29-1) at 6. It also provides that:

> "Therefore, all claims or controversies arising out of or in any way relating to the Agreement or the Resident's stay in the facility, including disputes regarding the interpretation of this Rider, whether arising out of State or Federal Law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law[]."

*Id.* Although Hammonds did not sign the rider himself, an official with the Department of Human Resources signed it as a "resident representative" on its own behalf and on behalf of Hammonds. *Id.* at 9.

Hammonds resided at MCSC for approximately five months. He alleges that during his time as a resident, the facility was not properly staffed; the existing staff

were not properly trained; and the staff subjected him to neglect, abuse, and other forms of mistreatment. The allegations are described in more comprehensive detail in an earlier opinion dismissing some of the claims in this case. *See Hammonds v. Montgomery Child.'s Specialty Ctr., LLC*, 594 F. Supp. 3d 1280, 1284-85 (M.D. Ala. 2022) (Thompson, J.).

In December 2019, Hammonds was admitted to Children's Hospital in Birmingham and given a primary diagnosis of a stage IV decubitus ulcer in the lower part of his pelvis, which reached the underlying bone, as well as mild chronic malnutrition. He received two operations involving the ulcer and was discharged from the hospital in January 2020. In May 2021, he initiated this lawsuit.

### C. Discussion

As the party seeking to compel arbitration, MCSC has the burden of demonstrating the existence of a binding arbitration agreement, its applicability to the claims at issue, and a sufficient connection to

9

interstate commerce to make the agreement enforceable under the FAA. The court finds that MCSC successfully meets each respective requirement.

This court begins its analysis by examining the validity of the contract containing the arbitration agreement. *See Ex parte Perry*, 744 So. 2d 859, 865 (Ala. 1999). Neither party disputes the existence of the arbitration rider, which was signed by an MCSC representative and a member of the Department of Human Resources who represented Hammonds. MCSC argues that the arbitration rider is valid--and binds Hammonds. Hammonds disagrees, arguing that he lacked "the capacity and competence" to enter into a contract on his own behalf and adding that "there is no proof" the State had the capacity to contract on his behalf. Plaintiff's Brief (Doc. 33) at 8. However, Hammonds does concede that he was a minor in the State's care at the time of his admission to MCSC. Amended Compl. (Doc. 21) at 4.

As stated, when deciding whether a contract to arbitrate a dispute exists, a court should apply state

law.  Because "arbitration is a matter of contract," a party "cannot be required to submit to arbitration any dispute which he has not agreed to submit."  *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

In Alabama, the general rule is that "a nonsignatory to an arbitration agreement cannot be forced to arbitrate [his] claims."  *SCC Montgomery Cedar Crest Operating Co., LLC v. Bolding*, 130 So. 3d 1194, 1196 (Ala. 2013).  However, there are exceptions to this rule.  The Supreme Court of Alabama has, for example, created "a distinct body of caselaw considering specifically the issue [of] how and when arbitration agreements executed by the owners and operators of nursing homes and their residents and/or their residents' family members should be enforced."  *Id*.

On several occasions, the Alabama Supreme Court has held arbitration agreements enforceable when they were signed on an individual's behalf by a third party vested with the power of attorney in the context of medical

11

care. *See id.*; *Troy Health & Rehab. Ctr. v. McFarland*, 187 So. 3d 1112, 1121 (Ala. 2015). That court has also held arbitration agreements enforceable when signed on a patient's behalf by a family member with apparent authority, even in the absence of a power-of-attorney agreement. *See Tenn. Health Mgmt. v. Johnson*, 49 So. 3d 175, 176 (Ala. 2010).

In addition to the above, Alabama has long recognized that, although minors cannot generally be bound by contracts signed on their behalf, there is an exception for "necessaries," such as healthcare. *Ragan v. Williams*, 127 So. 190, 191 (Ala. 1930). "[A] parent has a duty to provide for the medical care of his or her minor children," and there are at least certain circumstances in which "the parent should be able to bind the child [to a contract] in order to meet his or her duty of care." *Peck v. Dill*, 581 So. 2d 800, 804 (Ala. 1991), overruled in part on other grounds by *Ex parte State Farm Fire & Casualty Co.*, 764 So. 2d 543 (Ala. 2000).

12

Further, as an equitable principle, "a minor cannot take the benefits of a contract while disaffirming the burdens." *Id*. In *Peck*, the court found that, at least in the context of subrogation clauses for medical-insurance contracts, minors could not disaffirm such clauses after receiving medical treatment under the related insurance policies.

In the instant case, Hammonds spent roughly five months as a resident at MCSC, receiving at least some level of medical care--although the court recognizes Hammonds's allegations that the care he received was inadequate. Because Hammonds was in the custody of the State at the time the arbitration rider was signed, and because the State acted *in loco parentis* when signing that rider in order to secure Hammonds necessary medical care, the court is persuaded that the arbitration rider is not void.[4]

---

 4. The court recognizes that there are circumstances where the rights of minors require a higher level of protection when being bound to contracts--for example, in advance of any attempted settlement of a minor's claim

13

Second, having determined that the arbitration rider is presumptively valid, the court turns to the specific terms of the rider, which clearly encompass the claims that Hammonds raises in this litigation. His two state claims involve negligence and wantonness, and they are both directly based on the alleged actions of MCSC and its staffers during his five months as an MCSC resident. The terms of the rider compel arbitration for "all claims or controversies arising out of or in any way relating to the Agreement or the Resident's stay at the Facility, including disputes regarding the interpretation of this

---

on his behalf. *See Md. Cas. Co. v. Tiffin,* 537 So. 2d 469 (Ala. 1988). To this court's knowledge, the Alabama Supreme Court and the Eleventh Circuit have not held that arbitration riders signed on behalf of minors are subject to the same level of scrutiny.

Hammonds may wish to advance the argument that the contract, as a whole, should be voided or to produce some form of proof that the State did <u>not</u> have authority to sign the contract on his behalf. Such challenges to the contract as a whole, as well as any arguments of unconscionability, fraud, or duress, are matters for the arbitrator. *See Ex parte Perry*, 744 So. 2d 859, 867 (Ala. 1999) (finding that arbitration is the proper forum for challenges to the validity of the contract as a whole).

Rider, [and] ... irrespective of the basis for the duty or the legal theories upon which the claim is asserted." Arbitration Rider (Doc. 29-1) at 6. There are no provisions excluding claims such as those Hammonds raises from the terms of the rider and, in the absence of such an exclusionary clause, only "the most forceful evidence of a purpose to exclude the claim from arbitration" would suffice for the court to set aside an otherwise binding arbitration agreement. *AT&T Technologies*, 475 U.S. at 650 (internal quotation marks omitted).

The third criterion that MCSC must meet to succeed on its motion is a demonstration that the contract "involv[es] commerce" in order to be enforceable under the FAA. *Citizens Bank*, 539 U.S. at 53. It successfully does so. The arbitration rider itself states that "the parties hereto acknowledge and agree that the Resident's admission to the Facility combined with the Operator's participation in the Medicare program and/or procurement of supplies from out-of-state vendors, evidence transactions affecting or involving interstate

15

commerce," as governed by the FAA. Arbitration Rider (Doc. 29-1) at 7. The MCSC also received payments from Medicaid for providing Hammonds with medical care. Alabama case law holds that these connections are sufficient to establish interstate commerce under the FAA. *See, e.g.*, *Owens v. Coosa County Healthcare*, 890 So. 2d 983, 987 (Ala. 2004) (affirming an order to compel arbitration where a nursing home purchased supplies and equipment from other States, served out-of-state patients, and received Medicare funding); *McGuffey Health & Rehab. Ctr. v. Gibson ex rel. Jackson*, 864 So. 2d 1061, 1063 (Ala. 2003) (holding that an arbitration agreement was enforceable under the FAA for similar reasons).

Because MCSC meets all elements of its burden as the moving party to prove that the arbitration agreement is binding and enforceable under the FAA, the burden shifts to Hammonds, as the non-moving party, to "present evidence indicating that the arbitration provision is not valid or that it does not apply to the dispute in question." *Blue Cross Blue Shield of Alabama v. Rigas*,

16

923 So. 2d 1077, 1086 (Ala. 2005).  Hammonds offers no such evidence.

In his brief opposing MCSC's motion to compel arbitration, Hammonds repeatedly emphasizes that MCSC offers no documentation "to support the assertion" that the Department of Human Resources was his legal guardian. Plaintiff's Brief (Doc. 33) at 7.  He engages in rhetorical sleight-of-hand, arguing that the defendants have "no proof of [the department's] authority to bind Hammonds" while simultaneously hinting that "perhaps" such proof does exist, adding that MCSC's attorney will "probably" provide it.  *Id*. at 11.  This needlessly coy language is a red herring: in his own amended complaint, Hammonds concedes that he was "an involuntarily civilly incapacitated person" when the State placed him at MCSC. Amended Compl. (Doc. 21) at 4.  Because an "involuntary civil incapacitation" for a minor is not, to the court's knowledge, a legally significant designation, the court can only understand this statement to mean that Hammonds was, indeed, in the custody of the State at the time of

17

his admission.[5]

Additionally, under the standards for evaluating a non-moving party's opposition to motions to compel arbitration, "statements in motions and briefs are not evidence to be considered by the trial court in ruling on a motion to compel arbitration." *Serra Toyota, Inc. v. Johnson*, 876 So. 2d 1125, 1129 (Ala. 2003) (internal quotation marks omitted).  Outside of conclusory statements and allegations, Hammonds does not offer any proof to demonstrate that the arbitration agreement was

---

5. In his brief opposing arbitration, Hammonds repeatedly argues that MCSC fails to provide sufficient evidence that Hammonds was in the State's custody at the time of his admission.  However, as discussed in supra footnote 3, he concedes that he was in state custody (as a "involuntarily civilly incapacitated" minor) at that time.  Plaintiff's Brief (Doc. 33) at 10.  If Hammonds wishes to argue that the State did not have legal authority over him, despite the fact that he was in the State's custody, he can raise that issue with the arbitrator.

As previously stated, the court is unaware of any distinct legal category for the treatment of "involuntarily civilly incapacitated minors," relative to other minors in the State's custody.  However, if Hammonds wishes to draw such a distinction, that is also an issue for the arbitrator.

invalid, or that the State did not have legal custody to act *in loco parentis* when signing the arbitration agreement on his behalf.  Therefore, even reading the facts in the light most favorable to him as the non-moving party, Hammonds does not offer evidence sufficient to overcome MCSC's motion to compel arbitration.

Because this court finds that a legitimate arbitration agreement existed, that Hammonds's claims are covered by that agreement, and that the agreement is governed under the FAA, it is required to order arbitration under 9 U.S.C. § 4.  Because MCSC has requested a stay of litigation pending arbitration, the court is bound to grant the request under 9 U.S.C. § 3.  For this reason, the court grants the defendant's motion to compel arbitration and stay the litigation.

***

Accordingly, it is ORDERED that:

(1) Defendant Montgomery Children's Specialty Center, LLC's motion to compel arbitration (Doc. 28) is granted, and plaintiff Frankie Hammonds is compelled to

19

pursue further claims against defendant Montgomery Children's Specialty Center, LLC through arbitration as set out by the terms of the arbitration agreement signed by representatives for both parties.

(2) Defendant Montgomery Children's Specialty Center, LLC's motion requesting this court issue an administrative stay of proceedings, pending the resolution of arbitration, is also granted.  To the extent that its motion requests the court dismiss plaintiff Hammonds's remaining claims, it is denied.

This case is administratively closed pending arbitration.

DONE, this the 11th day of July, 2023.

                                    /s/ Myron H. Thompson
                              **UNITED STATES DISTRICT JUDGE**